NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| THEODORE S. CALABRESE, | Civil Action No.: 17-4987 (CCC-SCM) |
|---|---|
| Plaintiff, | |
| v. | OPINION |
| STATE OF NEW JERSEY, et al., | |
| Defendants. | |

**CECCHI, District Judge.**

I. **INTRODUCTION**

This matter comes before the Court on the motions of Jenny Barry ("Barry") (ECF No. 14-2), Barbara Rosen ("Rosen") (ECF No. 15-1), the State of New Jersey and the Hon. Marcella Matos-Wilson ("Matos-Wilson," and collectively with the State of New Jersey, the "State Defendants") (ECF No. 20-4), and Dr. Samris Sostre ("Sostre") (ECF No. 29) (and collectively with Barry, Rosen, and the State Defendants, "Defendants") to dismiss the amended complaint of Theodore S. Calabrese ("Plaintiff"). The Court has considered the submissions made in support of and in opposition to the instant motions. (ECF Nos. 19, 21, 22, 23, 27, 28, 34). Pursuant to Fed. R. Civ. P. 78(b), no oral argument was heard. For the reasons set forth below, Defendants' motions are **GRANTED**.

II. **BACKGROUND**

As this matter appears to stem from a complex and ongoing custody dispute, the following factual recitation includes only those factual allegations necessary for the Court to decide the instant motions. Plaintiff is a resident of Summit, New Jersey and was formerly married to non-party Rebekah Samuel ("Samuel"), with whom he had two children, R.C. and T.C. (ECF No. 4 ("Am. Compl.") ¶¶ 2, 8). In 2012, Plaintiff filed for divorce in the State of New York, which culminated in a settlement agreement

1

under which Samuel retained "sole legal and primary physical custody of the children," with the stipulation "that Plaintiff be involved in and make decisions jointly with [Samuel] with respect to all aspects of the children's lives[.]" (*Id.* ¶ 9). The New York Supreme Court approved the settlement agreement, which was entered as an order in December 2013. (*Id.* ¶ 10). In 2015, however, Samuel remarried and moved with the children to South Orange, New Jersey—allegedly without having informed Plaintiff in violation of the settlement agreement. (*Id.* ¶ 12). In 2016, Plaintiff relocated from the Cayman Islands to Summit, New Jersey and filed for joint custody in New Jersey Superior Court, which case was eventually assigned to Defendant Matos-Wilson. (*Id.* ¶¶ 16-17).

On January 3, 2017, Plaintiff avers that Samuel filed an order to show cause in the state proceeding and requested that Defendant Matos-Wilson suspend Plaintiff's visitation rights due to "an ongoing sexual abuse investigation into Plaintiff by" the New Jersey Department of Child Protection and Permanency ("DCPP"). (*Id.* ¶ 27). Plaintiff maintains that Samuel, as well as her counsel, Defendant Barry, "concocted this fraudulent claim to prevent Plaintiff's access to his children." (*Id.*). Indeed, Plaintiff avers that Defendant Barry "knew this [allegation] wasn't true, or should have, and made this statement to the Court anyway." (*Id.* ¶ 29). Plaintiff additionally avers that Defendant Rosen, his daughter's play therapist, "made a report to DCPP stating she had concerns of abuse" stemming from nude drawings the daughter had made in a session two weeks prior. (*Id.* ¶ 45). Plaintiff contends that Defendant Rosen "made this report fraudulently" at Samuel's behest, thereby "intentionally and fraudulently interfer[ing] with Plaintiff's parental rights[.]" (*Id.* ¶¶ 46, 49). Plaintiff maintains that Defendant Matos-Wilson thereafter "revoked Plaintiff's parental rights without verifying the veracity of the [Barry] allegation . . . [and] without a hearing" in violation of his constitutional rights. (*Id.* ¶¶ 28, 32).

On January 9, 2017, Defendant Matos-Wilson "partially reinstated Plaintiff's parental rights" once it was confirmed that Plaintiff was not under investigation by the DCPP. (*Id.* ¶ 49). Plaintiff contends that Defendant Matos-Wilson also "ordered a custody expert and psychological evaluation by DCPP be

2

completed on both parties." (*Id.* ¶ 53). In the meantime, following Samuel's filing of another order to show cause, Plaintiff states that Defendant Matos-Wilson again "revoked Plaintiff's parental rights without a hearing for the second time." (*Id.* ¶ 55). Plaintiff additionally makes numerous allegations concerning the veracity of the court-appointed expert Defendant Sostre's forensic report, as well as contends that Defendant Matos-Wilson denied him equal protection of the law in imposing child support obligations. (*Id.* ¶¶ 73-78, 95). In May 2017, Samuel filed yet another order to show cause, which Plaintiff contends Defendant Matos-Wilson granted without a hearing, once again in violation of his rights to due process. (*Id.* ¶ 98).

Plaintiff initially filed suit in this Court on July 7, 2017, with an Amended Complaint filed on July 27, 2017. (ECF Nos. 1, 4). In Count I, Plaintiff claims that Defendants violated his constitutional rights under color of law by interfering with his right to the "care, custody and control of minor children without due process," and requests declaratory and injunctive relief. In Count II, Plaintiff seeks declaratory judgment and injunctive relief to the effect that New Jersey's "best interests" standard is unconstitutional. In Count III, Plaintiff brings a claim for violation of the Equal Protection Clause of the Fourteenth Amendment, contending that "the established practice in New Jersey is to favor mothers with regard to parental rights under the unconstitutional assumption that they are better parents." In Count IV, Plaintiff seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

Courts must grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) if the court determines that it lacks subject-matter jurisdiction over a claim. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "Generally, where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *The*

3

*Connelly Firm, P.C. v. U.S. Dep't of the Treasury*, No. 15-2695, 2016 WL 1559299, at *2 (D.N.J. Apr. 18, 2016) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

The first step in evaluating a 12(b)(1) motion is determining whether the 12(b)(1) motion presents a facial attack or a factual attack. *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014). For facial attacks, "the court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). For factual attacks, however "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations . . . [and] the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.*

### B. Rule 12(b)(6)

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions . . . will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis: "First, the factual and legal elements of a claim should be separated . . . . Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that

the plaintiff has a 'plausible claim for relief.'" *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

IV. **DISCUSSION**

### A. Plaintiff's Claims Against the State Defendants Are Barred by Eleventh Amendment Sovereign Immunity and the Doctrine of Judicial Immunity

"Under the Eleventh Amendment, a state is immune to suit from its own citizens." *Denkins v. State Operated Sch. Dist. of City of Camden*, No. 16-4223, 2017 WL 5186335, at *2 (3d Cir. Nov. 9, 2017) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). "That immunity extends to entities that are not the state itself if the state is the real party in interest in the suit." *Id.* (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). In other words, the Supreme Court has "read the Amendment to bar not only suits against States themselves, but also suits for damages against 'arms of the State'—entities that, by their very nature, are so intertwined with the State that any suit against them renders the State the 'real, substantial party in interest.'" *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016) (quoting *Edelman*, 415 U.S. at 663). The Supreme Court has, moreover, clarified that this immunity additionally extends to state officials acting in their official capacities because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, state officials sued in their official capacities for monetary damages are not "persons" amenable to suit under Section 1983. *See Will*, 491 U.S. at 71. Where, however, state officials are sued in their official capacity for injunctive or declaratory relief, they may be considered "persons" amenable to suit under Section 1983. *Id.* at 71 n.10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" (citation omitted)).

Here, Plaintiff concedes that the Eleventh Amendment bars any direct claims against the State of New Jersey. (ECF No. 27 at 13 ("The State of New Jersey is not a proper Defendant in this matter.")).

5

Accordingly, any such claims are hereby dismissed. Plaintiff does, however, contend that Defendant Matos-Wilson is not entitled to Eleventh Amendment immunity as a "person within the meaning of 42 U.S.C. § 1983 with respect to [the] declarative and injunctive relief sought in this case." (Am. Compl. ¶ 6). Plaintiff further argues that "under 42 U.S.C. [§] 1983 state officials are not subject to immunity from suit if they are acting outside their judicial capacities." (ECF No. 27 at 13). Plaintiff therefore contends that Defendant Matos-Wilson is additionally not entitled to judicial immunity because "state officials are not subject to immunity from suit if they are acting outside their official capacities," and that "unconstitutional acts are never deemed judicial and can never be said to be taken in a state official's capacity." (*Id.*).

While the Court agrees that "the Eleventh Amendment does not generally bar prospective declaratory or injunctive relief,"[1] in order to obtain such relief, Plaintiff must "allege facts from which it appeared substantially likely that he would suffer *future* injury." *O'Callaghan v. Hon. X*, 661 F. App'x 179, 182 (3d Cir. 2016). While Plaintiff couches the relief sought as injunctive and prospective in nature, the Court finds that the amended complaint essentially seeks a declaration that Defendant Matos-Wilson *previously* violated Plaintiff's constitutional rights, including by, *inter alia*, failing to afford him the right to a hearing and interfering with other fundamental constitutional rights. (*See, e.g.*, Am. Compl. ¶ 1 ("Marcella Matos Wilson, a judge in the state of New Jersey, in her official capacity, deprived Plaintiff of liberty under color of law . . . without affording him . . . even the most minimal procedural protections guaranteed by the United States Constitution."). "That is not a proper use of a declaratory judgment,

---

[1] The Court does, however, note that 42 U.S.C. § 1983 has been amended "to provide that 'injunctive relief shall not be granted' in an action brought against 'a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable.'" *Azubuko v. Royal*, 443 F.3d 302, 304 (3d Cir. 2006). This represents yet another basis upon which the Court finds that Plaintiff's "request for injunctive relief is . . . unavailing." *Id.* at 303 (affirming dismissal of claim for injunctive relief where plaintiff failed to allege violation of a declaratory decree or that declaratory relief was unavailable, and "because the injunctive relief sought by [plaintiff] does not address the actions of [the state court judge] other than in his judicial capacity").

6

which is meant to define the legal rights and obligations of the named parties in anticipation of future conduct, not to proclaim their liability for past actions." *O'Callaghan*, 661 F. App'x at 182 (affirming dismissal of *pro se* plaintiff's claims against state court judge on similar grounds). The Court accordingly finds that Plaintiff has not "satisfied his burden of showing a substantial likelihood that he was likely to suffer some *future* injury at the hands of a named party" by merely alleging that he seeks injunctive relief against Defendant Matos-Wilson for "prospectively creating the opportunity for the violation of Plaintiff's rights."[2] (ECF No. 27 at 9); *see also O'Callaghan*, 661 F. App'x at 182; *Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions . . . will not do.'" (citations omitted)).

Additionally, to the extent Plaintiff contends that Defendant Matos-Wilson is not subject to the doctrine of judicial immunity, the Court disagrees. The doctrine of judicial immunity holds that "[a] judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *See Azubuko*, 443 F.3d at 303. Indeed, the Supreme Court has explicitly held that "'judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.'" *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978) (citation omitted). Judicial immunity, therefore, "is overcome in only two sets of circumstances. First, a judge is not immune from liability for

---

[2] Even if, assuming *arguendo*, the Court were to find that Plaintiff in fact sought prospective injunctive relief as to Defendant Matos-Wilson, the Court would be barred from interfering in the ongoing state custody proceedings pursuant to the *Younger* abstention doctrine. This doctrine reflects the "longstanding public policy against federal court interference with state court proceedings and instructs federal courts to refrain from taking any action in cases where the federal plaintiff has adequate redress in state-court proceedings." *Gromek v. Maenza*, 614 F. App'x 42, 45 n.3 (3d Cir. 2015). Here, assuming the custody proceedings are indeed ongoing, it would be inappropriate for this Court to interfere with the ongoing state proceedings by issuing any injunctive relief. *See id.* (affirming district court's dismissal of claims for injunctive relief, even where not explicitly addressed below, pursuant to *Younger* where plaintiff "continue[d] to challenge the State Defendants' actions in state court, [and] it would be inappropriate for the federal courts to interfere with the state's interest in adjudicating matters relating to child support obligations"). Alternatively, to the extent Plaintiff seeks to challenge any *final* judgments issued by the state court, the Court must abstain under the *Rooker-Feldman* doctrine. *See In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005) ("The *Rooker-Feldman* doctrine prevents 'inferior' federal courts from sitting as appellate courts for state court judgments." (citation omitted)).

nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citations omitted); *see also Stump*, 435 U.S. at 356-57 ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" (citation omitted)).

"With respect to the first inquiry, 'the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768-69 (3d Cir. 2000) (quoting *Stump*, 435 U.S. at 362)). "With respect to the second inquiry, we must distinguish between acts in the 'clear absence of all jurisdiction,' which do not enjoy the protection of absolute immunity, and acts that are merely in 'excess of jurisdiction,' which do enjoy that protection." *Id.* at 769. More specifically,

> Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend."

*Stump*, 435 U.S. at 356 n.6. For example,

> if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Id.* at 357 n.7.

The Court concludes that Plaintiff has failed to sufficiently plead that Defendant Matos-Wilson's alleged acts were non-judicial in nature. Plaintiff essentially maintains that "unconstitutional acts are

8

never deemed judicial and can never be said to be taken in a state official's capacity." (ECF No. 27 at 13). The Court, however, declines to find that Plaintiff has shown that Defendant Matos-Wilson's alleged acts were not judicial through conclusory averments that she acted "unconstitutionally." *See Iqbal*, 556 U.S. at 678 (citations omitted). Rather, the Court finds that Plaintiff's allegations concerning Defendant Matos-Wilson solely concern judicial acts or omissions that Defendant Matos-Wilson undertook in her judicial capacity as the presiding judge in the underlying state court litigation. (*See, e.g.*, Am. Compl. ¶ 19 ("Defendant diminished and/or revoked Plaintiff's parenting rights based on unverified allegations[.]"), ¶ 21 ("Defendant has never provided Plaintiff a hearing before limiting or revoking his rights."), ¶ 22 ("Defendant failed in her most basic function and responsibility as the presiding judge in a court of equity not only denying Plaintiff a most fundamental and irrefutable Constitutional right[] but by knowingly causing severe harm to the two small children[.]"); ¶ 23 ("Defendant has denied Plaintiff equal protection of the laws under the Fourteenth Amendment.")). While Plaintiff argues that immunity should not apply, Plaintiff nonetheless appears to concede in his opposition that "[t]hese orders are indeed judicial acts for which . . . Judge Matos-Wilson would be immune under 42 U.S.C. 1983." (ECF No. 27 at 6). Moreover, Plaintiff has failed to aver that Defendant Matos-Wilson acted outside of her judicial capacity; indeed, Plaintiff positively states that "Plaintiff dealt with Matos-Wilson only in her official capacity." (ECF No. 27 at 21). Accordingly, the Court concludes that Defendant Matos-Wilson's alleged acts were judicial in nature and are entitled to judicial immunity.

Finally, the Court concludes that Plaintiff has failed to explain how any of Defendant Matos-Wilson's purportedly unconstitutional acts were taken "in the 'clear absence of all jurisdiction.'" *See Stump*, 435 U.S at 356. Plaintiff merely states that "Matos-Wilson alleges that her jurisdiction over custody matters in the lower state court extends . . . to the point that she can violate the Constitution and be immune from liability from these acts." (ECF No. 27 at 21). Plaintiff has not proffered any specific allegations, however, that Defendant Matos-Wilson's acts were completely outside of her jurisdictional

9

grant as a New Jersey Superior Court Judge presiding over a family court proceeding. Accordingly, the Court declines to find that Defendant Matos-Wilson acted outside of her jurisdiction and must dismiss Plaintiff's claims brought against Defendant Matos-Wilson in her official capacity.

### B. Plaintiff's Claims Against Defendants Barry and Sostre Are Barred by the Litigation Privilege

"A statement made in the course of a judicial proceeding is absolutely privileged and wholly immune from liability." *Williams v. Kenney*, 877 A.2d 277, 286 (N.J. App. Div. 2005); *see also Loigman v. Twp. Comm. of Twp. of Middletown*, 889 A.2d 426, 438 (N.J. 2006) (noting the "extraordinary scope" of the litigation privilege in New Jersey jurisprudence). The privilege is grounded in essential public policy concerns "that jurors, witnesses, parties, and their representatives be permitted to speak and write freely without fear of liability." *Williams*, 877 A.2d at 286 (citations omitted). Accordingly, the litigation privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins v. Harris*, 661 A.2d 284, 289 (N.J. 1995) (citation omitted).[3] The New Jersey Supreme Court has, moreover, explicitly found that "the litigation privilege applies to § 1983 claims." *Loigman*, 889 A.2d at 436. "Whether a defendant is entitled to the privilege is a question of law." *Hawkins*, 661 A.2d at 289 (citation omitted).

#### i. Defendant Barry

Defendant Barry served as Plaintiff's ex-wife's counsel in the underlying state court proceedings before Defendant Matos-Wilson. Plaintiff avers that Defendant Barry made multiple false statements to the state court including: (1) that Plaintiff was under investigation by the DCPP for sexual abuse of his daughter, when there was no existing investigation; and (2) that a court- appointed expert witness had

---

[3] However, the last "two prongs may be analyzed in tandem, as the former is 'part and parcel' of the latter." *T.G. v. Kaplan*, No. A-5523-08T3, 2011 WL 1004645, at *12 (N.J. Super. Ct. App. Div. Mar. 23, 2011) (citation omitted).

10

requested a "delay" in making his best interests evaluation, where he had in fact never made such a request. (Amended Compl. ¶¶ 27, 29, 72). Defendant Barry claims that her statements fall squarely within the bounds of the litigation privilege. (ECF No 14-2 at 13-14). Plaintiff, in turn, argues that Defendant Barry's statements "were not made to achieve the objects of the litigation" and "do not have a connection or logical relation to the action" because they were intentionally made "in bad faith" and with the intent to "prompt an impetuous and heavy handed reaction by the judge whom Barry was working closely with to the exclusion of Plaintiff." (ECF No. 19 at 15-16).

The New Jersey Supreme Court has defined the litigation privilege's relation requirement as "not a technical legal relevancy, such as would, necessarily, justify insertion of the matter in a pleading or its admission into evidence, but rather a general frame of reference and relationship to the subject matter of the action." *Hawkins*, 661 A.2d at 290 (citations omitted); *see also Williams*, 877 A.2d at 288 ("Relevancy usually is interpreted liberally so that the speaker does not act 'at his peril.'" (citation omitted)). The same court has additionally cautioned "[t]hat [the] requirement 'was never intended as a test of a participant's motives, morals, ethics or intent.'" *Hawkins*, 661 A.2d at 290 (citation omitted).

Here, the Court finds that Plaintiff has failed to sufficiently plead that Defendant Barry's statements are unrelated to the underlying action. Defendant Barry maintains that the statements were made "to protect the interests of her client and her children in the matrimonial litigation." (ECF No. 14-2 at 13). Defendant Barry also contends that the purportedly "false statements concerning the sexual abuse investigation of Plaintiff and the preparation of the expert's reports were undoubtedly relevant to the underlying litigation as being related to the ongoing custody dispute." (*Id.* at 14). While Plaintiff focuses on Defendant Barry's alleged motivations in making these statements, he has not shown that her statements were entirely unrelated to the family court litigation. *See Hawkins*, 661 A.2d at 290 ("[The] requirement 'was never intended as a test of a participant's motives, morals, ethics or intent.'" (citation omitted)). Accordingly, the Court declines to find that Defendant Barry's statements were not intended

to achieve the objects of the litigation, or that they did not have a connection or logical relation to the action.[4] The Court therefore finds that her statements are protected by the litigation privilege and Plaintiff's claims against her must be dismissed.

### ii. Defendant Sostre

Defendant Sostre served as a court-appointed expert witness tasked with conducting a psychiatric examination of Plaintiff during the course of the state court litigation. (*See* Am. Compl. ¶ 73. Plaintiff, however, claims that Defendant Sostre's report "was not made to achieve the objects of the litigation . . . nor does it have a connection or logical relation to it." (ECF No. 34 at 9; *see also* Am. Compl. ¶¶ 73-78). In support of this contention, Plaintiff argues that "the report was not based on a forensic evaluation or the files provided to Sostre by the DCPP." (*Id.*). The Court disagrees. In *P.T. v. Richard Hall Community Mental Health Care Center*, 837 A.2d 436, 449 (N.J. Super. Ct. Law. Div. 2002), *aff'd*, 837 A.2d 377 (N.J. App. Div. 2003), plaintiffs brought suit against a court-appointed psychologist, who had proffered her opinion to the family court in plaintiffs' underlying child custody proceedings. *Id.* at 439-41. The plaintiffs therein argued, *inter alia*, that the psychologist had gone "beyond any protected activity and in effect became an advocate for outcomes and determinations she believed were justified notwithstanding the fact that they were based, in plaintiffs' view, on grossly negligent, reckless and careless accusations leveled by her against plaintiffs." *Id.* at 449. "Indeed, plaintiffs suggest[ed] that [the psychologist] improperly mixed her therapeutic role with a role of advocacy which had never been requested of her, itself in plaintiffs' view a violation of her ethical obligations." *Id.* The court, however, found that

> it is clear beyond any significant doubt that the communications and statements made by [the psychologist] to either of the Family Part judges who were involved in the underlying action or to others within the court system were plainly made in the context of the litigation and plainly therefore are cloaked in the litigation privilege.

---

[4] Plaintiff does not appear to challenge that Defendant Barry's alleged statements satisfy the first two prongs of this inquiry. (*See* ECF No. 19 at 15). Indeed, Plaintiff frequently refers to Defendant Barry's statements to the court. (*See id.* ("[T]here is no argument that Barry's statements were a communication to the judge[.]")). Accordingly, the Court finds that the first two prongs are also met in this instance. *See Hawkins*, 661 A.2d at 289.

12

*Id.* The court therein reasoned that to rule otherwise would "undercut" the rationale of the litigation privilege, in that "[t]he privilege rests on the need to ensure complete candor and forthright, open and honest communication of her views based upon her evaluation and therapy with this child, all of which would be severely compromised were we to determine that the privilege does not apply here." *Id.* The Court finds this logic persuasive. Here, Defendant Sostre's "report of her psychiatric examination of [P]laintiff was in furtherance of [the] custody litigation" vis-à-vis her role as a court-appointed expert witness. (ECF No. 29 at 15). Her report quite plainly falls within the scope of the litigation privilege, as well as its underlying rationale. The Court accordingly must dismiss Plaintiff's claims against Defendant Sostre as barred by the litigation privilege.

### C. Plaintiff Fails to State a Claim Against Defendant Rosen

Where a plaintiff seeks to allege the direct deprivation of a federal constitutional right: (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Similarly, a plaintiff seeking to bring claims under Section 1983 must allege "two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011). Here, Plaintiff does not allege that Defendant Rosen is a state official, employee, or agent; rather, Plaintiff appears to concede that Defendant Rosen acted as a private citizen in accordance with her role as a licensed social worker. (Am. Compl. ¶¶ 45-46 (noting that Defendant Rosen was hired by Plaintiff's ex-wife)). Plaintiff instead maintains that Defendant Rosen "is a state actor acting under the color of law" because of her "engagement, or joint participation, with the state" to cause Plaintiff's purported constitutional harms. (ECF No. 23 at 8-9).

The Third Circuit has previously addressed "'the degree to which the state and the [private] entity exist in a "symbiotic relationship" or under circumstances where the conduct of the private actor can be fairly imputed as that of the state.'" *Groman v. Twp. of Manalapan*, 47 F.3d 628, 641 (3d Cir. 1995). The Third Circuit held that "[w]hile the exact contours of this state action inquiry are difficult to delineate, the interdependence between the state and private actor must be pronounced before the law will transform the private actor into a state actor."[5] *Id.* (concluding there was "no symbiotic relationship, joint participation, or other connection sufficient to demonstrate the first aid squad was acting under color of state law"); *cf. Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982) ("Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment.").

Courts within this Circuit have applied this standard to conclude that social workers who independently reported concerns of child abuse or neglect to local law enforcement or to various state agencies were not in fact state actors for the purposes of Section 1983. For example, in *Dennis v. DeJong*, 867 F. Supp. 2d 588 (E.D. Pa. 2011), plaintiffs' claims arose "out of a child abuse investigation which resulted in plaintiffs Reginald Dennis and Renee Dennis temporarily losing custody of their infant son, plaintiff B.D." *Id.* at 608. Plaintiffs filed suit against, *inter alia*, Dr. DeJong, the director of the hospital's Children at Risk Evaluation division, and Mr. Edward Spelling, a social worker employed in that division, alleging "that Dr. DeJong and Mr. Speedling jointly participated with state officials in the seizure of B.D. and in the seizure of Mr. Dennis." *Id.* at 647. The court concluded that "there is no evidence that Dr. DeJong's professional opinions, or his professional conduct, regarding determining the cause of B.D.'s injuries were dictated or controlled by the state," nor that his provision of his medical opinion to the police

---

[5] The Court notes that the Supreme Court has held that "the under-color-of-state-law requirement does not add anything not already included within the state-action requirement of the Fourteenth Amendment[.]" *Lugar*, 457 U.S. at 935. Accordingly, the Court's analysis as to state action applies to both Plaintiff's direct constitutional claims and Section 1983 claims.

14

and the District Attorney's office was "sufficient to transform his private action into state action." *Id.* at 648. The court also denied plaintiffs' claims against Mr. Speedling, finding that "the Complaint alleges even fewer reasons supporting the conclusion that Mr. Speedling is a state actor than it did for Dr. DeJong." *Id.* at 652 n.226. More specifically, the Court concluded that "plaintiffs have not alleged that Mr. Speedling's professional decisions in his capacity as a duPont Hospital social worker were dictated or guided by the state, or that the state controlled his professional conduct when he reported his concerns of child abuse to CYS and the Chester County Police Department." *Id.* (citing *Groman*, 47 F.3d at 642.).

The Court is persuaded by the analysis in *Dennis* and finds it applicable to the instant case. Here, Plaintiff concedes that Defendant Rosen is a private citizen and licensed social worker. (*See* ECF No. 23 at 4 ("Because Rosen does not understand that a private person can be a state actor, she doesn't address how she, a private social worker, is not a state actor[.]")). While Defendant Rosen's decision to report any suspected abuse to DCPP may have impacted Plaintiff in the state custody litigation, Plaintiff has not averred that any state authority affirmatively ordered or controlled Defendant Rosen's actions. Nor has Plaintiff shown that Defendant Rosen acted symbiotically with state authorities so as to render her a state actor by merely communicating her concerns of abuse to the court or other state authorities. *See Dennis*, 867 F. Supp. 2d at 652 n.226. The Court therefore finds that Plaintiff has not pled factual allegations sufficient to show that Defendant Rosen was acting under color of state law. Accordingly, the Court will dismiss Plaintiff's claims against Defendant Rosen. *See D.V. v. Miller*, No. 08-552, 2008 WL 4816484, at *4-6 (W.D. Pa. Nov. 4, 2008) (concluding private social worker hired by children's mother was not a state actor under Section 1983).

## V. CONCLUSION

For the reasons stated above, the Court will dismiss Plaintiff's claims against all Defendants without prejudice. An appropriate Order accompanies this Opinion.

Date: May 31, 2018

_____
CLAIRE C. CECCHI, U.S.D.J.